IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GLENN DOLFORD,<br><br><br>**Defendant.** | Case No: 23-CR-190 |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Glenn Dolford, through undersigned counsel, respectfully submits his memorandum in aid of sentencing.

**I.  Introduction**

Mr. Dolford comes before the Court for sentencing after pleading guilty to two counts of Interference with Interstate Commerce by Robbery in violation of 18 U.S.C.§ 1951.  He accepts full responsibility for his conduct.   However, he is not defined by the decisions that led to his appearance before this Court for sentencing.  This memorandum is not intended to excuse or minimize his actions, but rather, to present to the Court a full picture of Mr. Dolford.  We respectfully submit that other factors also have substantial importance in determining the appropriate sentence in this matter.  In particular, we suggest that focus is warranted on his upbringing, strong family support system, his acceptance of responsibility, and creating a circumstance where he can succeed once released from prison.

The first and most critical thing to be said about Mr. Dolford relates to the issue of remorse.  Between February and June 2020, Mr. Dolford made a series of choices that changed his life.  In this short period of time, he participated in offenses that cost a person

their life and traumatized employees at a pharmacy and a cell phone store. Mr. Dolford regrets these decisions and has accepted responsibility. He has already been sentenced to more than 22 years in prison for the offense that occurred in February 2020. He pleaded guilty in this case, knowing it may result in additional prison time.

It is impossible to determine why someone engages in criminal conduct. In the case of Mr. Dolford, a series of traumatic events he faced at a young age changed him. Watching his mother being a victim of domestic violence and his father being shot and left for dead robbed him of his innocence. This is not an attempt to excuse or minimize Mr. Dolford's actions in this case. But we submit it is critical to consider his life experiences and circumstances in deciding the appropriate sentence. Mr. Dolford exhibits characteristics commonly seen in individuals exposed to violence during early childhood. Such early exposure to trauma and violence can have a deeply damaging effect on a child's developing brain and emotional health, often disrupting their sense of security and resulting in persistent fear, anxiety, and post-traumatic stress disorder.

Mr. Dolford fully understands and appreciates the wrongfulness of his conduct. He accepts responsibility and has vowed never again to put himself in this situation. His family has vowed to stand by him. He is grateful for the love and support from his family. He knows that most people in his situation are not as fortunate as him. He also knows that telling his loved ones he will change is not enough; he needs to show his appreciation and commitment to change through his actions. Based on these and other circumstances described below, we ask the Court to sentence Mr. Dolford to a term of incarceration of 77 months, with the time to run concurrent to the 270-month sentence imposed in the Superior Court for the District of Columbia, *United States v. Dolford*, 2010 CF1 005539. USSG §

5G1.3  This sentence would be sufficient, but not greater than necessary, to effectuate the purposes of sentencing prescribed in 18 U.S.C. § 3553(a).

## Argument

### *Legal Standard*

The Court is required to consider the Federal Sentencing Guidelines in imposing a sentence, but *United States v. Booker,* 543 U.S. 220 (2005) provides that the Guidelines are "merely one sentencing factor among many, and the calculated guideline range must be considered in conjunction with the other § 3553(a) factors." *United States v. Reinhart*, 442 F.3d 857, 864 (5th Cir. 2006) (citing *Booker*, 543 U.S. at 245–246).  The Guidelines are "but one of eight factors the sentencing judge must consider." *United States v. Ovid*, No. 09-CR-216 (JG), 2010 U.S. Dist. LEXIS 105390, at *5 (E.D.N.Y. Oct. 1, 2010).

The factors enumerated in 18 U.S.C. § 3553(a) direct the Court to consider the full history and character of the defendant.  Focus on the § 3553 factors "produces sentences that are moored to fairness, and to the goals of sentencing set forth in § 3553(a)(2), but sometimes not so much to the advisory Guidelines range." *Id.* at *4-5.  18 U.S.C. § 3553 requires a "sentence sufficient, but not greater than necessary" when the following factors are considered:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant . . . (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

3

18 U.S.C. § 3553 (2022). In considering these factors, 18 U.S.C. § 3661 states that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (2022).

*History and Characteristics of Mr. Dolford*

Glenn Dolford is a 32-year-old lifelong resident of the greater Washington area. He has three maternal siblings. His older brother, Asprey Collins, is a teacher in Prince George's County, Maryland. One of his younger sisters, Antoinette Patterson, works for the Prince George's County Circuit Court while pursuing her law degree. His youngest sister, Kayla Lewis, is a homemaker, recently married, and taking care of two small children. Mr. Dolford was fortunate to have a pleasant upbringing. He was the only child from the relationship between his father, Glenn Dolford, and his mother, Dr. Dana Collins. His parents were never married, and they never lived together as a family. From as long as Mr. Dolford can remember, he would split his time between Washington, D.C., where his dad lived, and Maryland, where his mother and siblings lived.

Mr. Dolford had a good relationship with both of his parents. His mother was a busy professional and often changed jobs to pursue higher-paying positions. This meant Mr. Dolford often had to move and change schools. His father got Mr. Dolford involved in sports from a very young age. Mr. Dolford was always very active, and his parents channeled his energy into sports. Mr. Dolford loved sports, and he was very gifted at basketball and football. Both parents would attend games and support their son. Mr. Dolford's father used sports as an opportunity to bond with his son and also try to prevent

4

him from making the same mistakes he had made in his youth. In addition to being a gifted athlete, Mr. Dolford found school easy. He often found himself unchallenged by the ordinary curriculum and lost focus.

Despite reporting his childhood as healthy, Mr. Dolford experienced trauma at a young age. When he was 9 years old, his father worked at a barbershop in Washington, D.C. Mr. Dolford often went to work with his father. He would watch his father practice his craft, and they would spend time bonding between appointments. One day, an unknown assailant came into the barbershop when Mr. Dolford's father had a customer in the chair. The assailant pulled out a handgun and shot Mr. Dolford's father at close range. Mr. Dolford watched as his father was shot 8 or 9 times and left for dead on the floor of the barbershop. As he was watching his father lying on the floor, bleeding and fighting for his life, Mr. Dolford called 911. Mr. Dolford's father spent a few weeks in the hospital recovering from the shooting. He made a full recovery. The event caused Mr. Dolford's father to become more religious and make changes in his life. His father is now a Deacon at a church in Maryland.

Around the time of his father's shooting, Mr. Dolford also witnessed his mother suffer from domestic violence. No child is equipped to handle the trauma associated with seeing both parents become victims of violence. His mother was in a relationship with someone who would beat her, oftentimes in front of her children. Mr. Dolford recalls seeing his mother being hit and choked. Fortunately, his mother was able to escape the relationship. The shooting of his father and watching the abuse his mother went through brought Mr. Dolford closer to his parents and siblings. It also caused him to lose trust in people. He became more aggressive and protective of his family members. Over time, his

5

aggression grew, and he developed a loyalty to friends he made in the neighborhood. By the time he was 17, he was arrested for the first time.

Mr. Dolford is not the brazen, unrepentant criminal described by the government. Mr. Dolford is "thoughtful, gentle, and kind at his core." Exhibit 1, Letter from Kayla Lewis. He is genuinely remorseful for his actions. He has shown "sincere remorse and a deepening sense of responsibility." Exhibit 2, Letter from Dr. Dana Collins. At his core, he is a good person. He is a great sibling, son, and parent. It is not lost on Mr. Dolford that he was involved in conduct that took someone's life. He also understands and appreciates the emotional scars that the victims in this case have suffered. However, he is not defined by what he did in February 2020 and June 2020.

The true character of Mr. Dolford is described in the letters written by his family. He is a "loving, protective, and very outgoing" brother whose "charisma just makes everyone who knows him smile from ear to ear with his random outburst[s] and jokes." Exhibit 3, Letter from Asprey Collins. His younger sister describes Mr. Dolford as her "protector, the one [she] looked to for reassurance and comfort." Exhibit 4, Letter from Antionette Patterson. Mr. Dolford was "often the spark that turned ordinary moments into cherished memories" and "has always had a remarkable ability to uplift those around him." *Id.*

Shortly before his arrest in June 2020, Mr. Dolford became a father. He is the proud father of two young sons. He only had a few precious months to spend time with them before his arrest. This fact has haunted him every day since being arrested. Despite the circumstances, Mr. Dolford uses his children as his motivation. They inspire him to stay out of trouble and stay positive. When Mr. Dolford starts to lose hope and become

6

overwhelmed by the amount of time he has left to serve, he thinks of his sons and what he can do to be a better father. *See* Exhibit 5. He takes every opportunity to speak with them and has been a model inmate at the DC Jail to maximize the opportunities to interact with his sons. Tragically, there have only been two family events in the last five (5) years where Mr. Dolford was able to hold his children. He cherishes the memories of being able to see and hold his sons. He asked for a sentencing in July 2025 in the hopes that he could attend a family day where both of his children would attend. Unfortunately, the event was cancelled without explanation. His children and family support will ensure that Mr. Dolford does not lose hope and become institutionalized. He will not let his family down and will be the role model his children need and deserve.

***Nature and Circumstances of the Offense***

On June 8, 2020, Mr. Dolford participated in a robbery of a CVS in Nottingham, Maryland. He did not plan the robbery or take part in the preparation. On the day of the offense, he travelled from Washington, DC to Maryland to participate in the crime. Approximately $1,000.00 worth of pills were taken from the location. One of the store employees was physically assaulted, but no guns were used or brandished.

Less than 24 hours later, Mr. Dolford participated in a second robbery. This time, the target was a T-Mobile store in Maryland. He did not plan the robbery or take part in the preparation. On the day of the offense, he traveled from Washington, DC to Maryland to participate in the crime. Approximately $20,000.00 worth of cell phones and accessories were taken from the location. One of the store employees reported that one of the individuals involved in the robbery held his hand near his waistband, suggesting he was armed. No gun or other weapons were brandished.

*Need for The Sentence Imposed*

Mr. Dolford is ashamed and embarrassed by his actions. We present details about his upbringing and circumstances in order to help put his actions in context, not to excuse them. The last 60 months of incarceration at the DC Jail have had a profound effect on Mr. Dolford. While any period of incarceration is difficult, Mr. Dolford's experience has been particularly severe. He has spent most of his time in Northwest 1. The conditions at the DC Jail are deplorable, particularly in his housing unit. It is not uncommon for raw sewage to be seen in this housing unit, and there is significant mold in the cells and around the unit. Demands to address the situation have been ignored.

While members of the Court have recently toured the DC Jail to see the conditions, none have borne witness to what happens in Northwest 1. Other individuals in the unit are young and continue to engage in unlawful conduct. Violent acts, including stabbings, are a routine occurrence. Mr. Dolford's physical and mental health have also declined. Every time he looks in the mirror, he will see one of the physical and emotional scars resulting from his incarceration. This will serve as a deterrent to keep him from ever putting himself back in a situation where he will be incarcerated.

A person's inability to see the long-term consequences of a particular choice or set of choices is often what causes him or her to go down the wrong path. Generally speaking, as a person matures, the easier this mental exercise—considering each choice to its logical end— becomes. The Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), which prohibits mandatory life in prison without the possibility of parole sentences for juvenile offenders, was based primarily on a recognition that among the "hallmark features" of youth are "immaturity, impetuosity, and failure to appreciate risks

8

and consequences." *Id.* at 477. Studies, including one co-sponsored by the Department of Justice's Office of Juvenile Justice and Delinquency Prevention, have found that "youth experience protracted maturation, into their mid-twenties, of brain systems responsible for self-regulation." Steinberg, Laurence, et al., "Psychosocial Maturity and Desistance from Crime in a Sample of Serious Juvenile Offenders," *Office of Juvenile Justice and Delinquency Prevention*, March 2015, at 1.

In making the series of poor decisions that brings him before the Court for sentencing, Mr. Dolford acted in a way that demonstrates the 'hallmarks' of an immature brain: poor impulse control and an inability to balance risks or resist peer influence. This, of course, is consistent with an inability to reliably foresee the consequences of his actions. He understands that relying on his youthful status is no longer an option—he was 26 years old at the time of the offenses in this case and now comes before the court at 32 years old. He must make changes now.

Mr. Dolford does not try to shift blame onto others for his circumstances, nor does he express a sense of entitlement to do whatever he wants. That being said, Mr. Dolford is continuing to mature, and with that maturity will come a better sense of himself and a deeper appreciation for long-term consequences. He also needs to be a role model to his two young sons. The path forward for Mr. Dolford will be difficult after serving 20 years in prison. He wants and needs the community's help in order to change his trajectory. Most importantly, he has the desire to change. He will show the Court he has put his past behind him and will come out of prison an asset to the community instead of a burden.

It is clear to Mr. Dolford that the path he was on prior to his arrest in June 2020 was going to end in tragedy. Spending time with bad influences and his reckless lifestyle meant

9

he was likely to end up in prison or dead. The last five (5) years have allowed him to mature, gain insight into his past, and plan for the future. He has been able to realize what matters in life—his family. He intends to continue to build his relationship with his sons. The people he previously associated with are not part of his future; he wishes them well but will never again speak with them. Once he is released from prison, he hopes to relocate to South Carolina. By that time, his sons will be adults, and he will try to make up for all of the lost time. Mr. Dolford's strong fortitude, positive outlook, and strong family support give him unlimited potential. He will not squander the opportunity to rebuild his life once he is released. Mr. Dolford is committed to getting the treatment he needs, learning how to deal with his past trauma, being the best father he can be, and coming out of prison a better man and becoming an asset to his community.

    We respectfully submit that the community is better served by imposing a sentence that is concurrent with the 270-month sentence imposed on Mr. Dolford in June 2023. He needs help and support, not punitive incarceration. He needs skills to learn how to support himself and make the right decisions. Mr. Dolford has expressed genuine remorse and a desire to change. Not a day goes by that he does not think about the reckless choices he made in February 2020 and June 2020 that led to his appearance before this Court. If given another chance, Mr. Dolford will take advantage of any and all opportunities to gain life skills and make the right decisions. He also asks the Court to allow him to receive mental health treatment to address the trauma from his past and understand its influence on his past, present and future. Once released from prison, Mr. Dolford asks the Court to allow him to participate in the Reentry Court Program and allow him to participate in the D.C. Resources to Empower and Develop You (READY).

*The Imposition of a Fine Is Unnecessary*

We respectfully request that the Court exercise its discretion to decline to impose a fine upon Mr. Dolford. Imposing a monetary fine would not serve the interest of justice or the public interest. This conviction entails a number of consequences, all of which will negatively impact his life. Upon his release from prison, Mr. Dolford will work to reintegrate back into society and obtain stable employment. The imposition of a fine would only serve to hinder this objective.

## Conclusion

Mr. Dolford understands that the situation he finds himself in is the direct result of his actions. It is our submission that he is not and should not be defined by his actions that led to his appearance before the Court. He has accepted responsibility and pleaded guilty to demonstrate his remorse. He will continue to try to make amends to show that his desire to change is genuine through his actions. We respectfully submit that a sentence of 77 months, fully concurrent to the 270 months sentence he is serving in connection with *United States v. Dolford*, 2010 CF1 005539, is appropriate and in accordance with the requirements set forth in 18 U.S.C. § 3553(a) and ask the Court to impose such a sentence.

Respectfully submitted,

/s/Marc Eisenstein
Marc Eisenstein
Coburn Greenbaum & Eisenstein PLLC
1710 Rhode Island Ave, NW
Second Floor
Washington, DC 20036
Tel: 202-470-2695
marc@coburngreenbaum.com

Case 1:23-cr-00190-ABJ   Document 206   Filed 07/14/25   Page 12 of 12

12

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 14, 2025 a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all counsel of record.

/s/  
Marc Eisenstein
